**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

Filed/Docketed
Nov 26, 2018

IN RE:                                )
                                      )
CLARK, Jay D.,                        )       Case No. 11-11723-R
CLARK, M'Lisa,                        )       Chapter 13
                                      )
                Debtors.              )

_____

JAY D. AND M'LISA CLARK,              )
                                      )
                Plaintiffs,           )
                                      )
vs.                                   )       Adv. No. 17-01031-R
                                      )
SELECT PORTFOLIO SERVICING, )
INC.,                                 )
                                      )
                Defendant.            )

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT;**
**GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; AND**
**<u>ESTABLISHING CERTAIN UNDISPUTED FACTS IN THE CASE</u>**

Before the Court is Defendant Select Portfolio Servicing, Inc.'s Motion for Summary

Judgment (Adv. Doc. 19) and brief in support thereof (Adv. Doc. 20) filed by Select Portfolio

Servicing, Inc. ("SPS") on May 29, 2018 ("SPS's Motion"); Plaintiffs' Response to

Defendant's Motion for Summary Judgment, Plaintiffs' Motion for Summary Judgment, and

Brief in Support (Adv. Doc. 21) filed by Plaintiffs Jay and M'Lisa Clark (the "Clarks") on

June 19, 2018 ("Clarks' Response and Cross-Motion"); Defendant Select Portfolio Servicing,

Inc.'s Response to Plaintiffs' Motion for Summary Judgment (Adv. Doc. 22) filed by SPS

on July 5, 2018 ("SPS's Response to Cross-Motion"); and Plaintiffs' Reply to Defendant's

Response to Plaintiffs' Motion for Summary Judgment (Adv. Doc. 25) filed by the Clarks

on July 19, 2018.

## I.    Jurisdiction

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and § 157(a) and (b)(2)(O), and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

## II.    Background

The Clarks filed a petition under Chapter 13 of the Bankruptcy Code in June of 2011. As of the petition date, the Clarks were in default on the mortgage on their principal residence, and they had accumulated a prepetition arrearage of approximately $32,000.00. In January 2012, the Court confirmed the Clarks' Second Amended Chapter 13 Plan, a sixty-month plan into which the Clarks would pay all their disposable income. From the plan payments, the Chapter 13 Trustee ("Trustee") was to disburse funds to the mortgagee in specific amounts (1) to cure the arrearage over the life of the plan, and (2) to maintain the Clarks' contractual monthly installment payments. The Clarks fully complied with their payment responsibilities under the Plan and received a discharge in August of 2016.

After the Clarks completed their plan and obtained their discharge, SPS, as servicer for the mortgagee (collectively, the "Mortgagee"),[1] declared the note and mortgage in default based upon alleged unpaid postpetition installment payments. Although the Clarks made all the payments to the Trustee that were required by the plan, and the Trustee made all the

_____

[1]Although the note and mortgage were transferred to or otherwise acquired by different entities over the course of the bankruptcy case, the Court will refer to the entity that held the note and mortgage, and/or its servicer, as the Mortgagee unless the identity of a specific entity is relevant. SPS, the defendant in this proceeding and the party to these cross-motions, is the servicer for the current mortgagee.

disbursements to the Mortgagee that were required by the plan, SPS contends that the monthly maintenance payments made by the Trustee were insufficient to keep the mortgage current. The Mortgagee had filed a notice of payment change four months prior to confirmation, but the plan did not reflect that payment change. As a result, the monthly maintenance payments disbursed by the Trustee were approximately $350.00 less than the amount stated in the preconfirmation notice of payment change. SPS alleges that an arrearage of $20,107.44 accumulated during the term of the plan. After the discharge was entered and the case was closed, SPS declared the Clarks' mortgage to be in default and undertook efforts to collect on the note.

In September of 2018, the Clarks filed their Complaint alleging that (1) SPS violated the automatic stay by misapplying payments made under the Plan; (2) SPS's misapplication of payments also violated the discharge injunction under 11 U.S.C. §§ 524(i) and 524(a)(2);[2] (3) in commencing and continuing collection activities, SPS acted willfully and egregiously, entitling the Clarks to punitive damages; and (4) SPS violated various sections of the Fair Debt Collection Practices Act. SPS filed a counterclaim seeking an order declaring the Clarks delinquent on their obligations under the note and mortgage.

Both parties seek summary judgment. SPS seeks a judgment dismissing the Clarks' claims and "determining that [SPS] is entitled to pursue the missing payments post discharge."[3] The Clarks seek a judgment determining that they "were current on the

---

[2]Unless otherwise stated, all statutory references are to sections of the Bankruptcy Code, title 11 of the United States Code.

[3]SPS's Motion at 1.

mortgage as of the conclusion of their Chapter 13 bankruptcy and that [SPS] is precluded from offering evidence to the contrary at trial."[4]

## III.  Summary judgment standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and is "entitled to judgment as a matter of law."[5]  A fact is "'material' if under the substantive law it is essential to the proper disposition of the claim."[6]  An issue is "'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[7]

"[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[8]  Reasonable inferences that may be made from the record should be drawn in favor of the non-moving party.[9]

"If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case."[10]

---

[4]Clarks' Response and Cross-Motion at 5.

[5]Fed. R. Civ. P. 56(a), made applicable to this proceeding by Bankruptcy Rule 7056.

[6]Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).

[7]Id.

[8]Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[9]See Adler, 144 F.3d at 670.

[10]Fed. R. Civ. P. 56(g), made applicable to this proceeding by Bankruptcy Rule 7056.

## IV.    Undisputed material facts

As requested by the parties, the Court has taken judicial notice of the record in the main bankruptcy case.  The following material facts are not genuinely disputed and will be treated as established facts in this case for the purposes of trial.

On June 16, 2011, the Clarks filed their Petition for relief under Chapter 13 of the Bankruptcy Code.[11]  On August 12, 2011, the Mortgagee filed its Proof of Claim asserting that as of the petition date, the Clarks owed $164,817.27 on a note secured by a mortgage on their primary residence, and their account was in arrears in the amount of $32,216.77.[12]  No party in interest objected to the Mortgagee's Proof of Claim.  In their First Amended Plan, filed on August 17, 2011, the Clarks proposed that in addition to curing the arrearage, the Trustee would disburse contractual installment payments to the Mortgagee in the amount of $1,115.46 per month.[13]  The Clarks noted in the plan that this amount was consistent with the "[t]otal monthly mortgage payment as stated in the June 1, 2011, Rate Change Notice."[14] The Mortgagee did not object to the First Amended Plan.

On September 1, 2011, the Mortgagee filed a Notice of Payment Change, effective September 1, 2011, indicating that the new monthly payment amount was $1,462.14 ("September 2011 Notice of Payment Change").[15]

---

[11]Main Case Doc. 1.

[12]Claims Register, Proof of Claim No. 4.

[13]First Amended Plan, Main Case Doc. 22.

[14]Id. at 2.

[15]Main Case Doc. 27.

On December 14, 2011, the Clarks filed their Second Amended Plan.[16]  Like the First

Amended Plan, the Second Amended Plan also proposed that the Trustee would disburse

plan funds to cure the arrearage and also disburse monthly maintenance payments in the

amount of $1,115.46.  Again, the Clarks recited that the amount of $1,115.46  corresponded

to the June 1, 2011 Rate Change Notice.[17]

As pertinent to the claims of the Mortgagee, the Second Amended Plan provided as

follows:

6.    **Postpetition Mortgage Payments**.  Payments received by holders
and/or servicers of mortgage claims for ongoing postpetition installment
payments shall be applied and credited to the debtors' mortgage account as if
the account were current and no prepetition default existed on the petition date
in the order of priority specified in the note and mortgage and applicable
nonbankruptcy law.  Postpetition installment payments made directly by the
Debtor(s) in a timely manner under the terms of the note shall be applied and
credited without penalty.  No late charges, fees or other monetary amounts
shall be assessed due to the timing of any payments made by the Trustee under
the Plan.

7.    **Postpetition Mortgage Payment Changes**.  Holders and/or servicers
of mortgage claims shall make adjustments to the ongoing installment payment
amount as required by the note and mortgage and applicable nonbankruptcy
law, including changes based on an escrow analysis for amounts required to
be deposited in any escrow account or based on an interest rate provision in an
adjustable rate mortgage.  Holders and/or servicers shall timely file in the case
a notice of such payment adjustments and any shortage, deficiency or surplus
in any escrow account, which reflects the new or adjusted payment amount and
the effective date there[of].

8.    **Change in Monthly Plan Payment Due to Change in Mortgage
Payment(s).**  Upon notice from the holders and/or servicers of mortgage
claims of a change in the monthly payment, which is filed in the case, the

---

[16]Second Amended Plan, Main Case Doc. 37.

[17]Id. at 2.

Trustee is authorized to increase or decrease the Chapter 13 plan payment to provide for each change without necessity of formal modification of the plan. This authorization shall include submitting amended wage deduction order(s) for entry by the Court. To be effective as to the Trustee, the notice of payment change must be filed in the case. The Trustee shall not be required to make retroactive payment changes and shall have the election of not making changes of $10.00 of less per month. Changes in the monthly mortgage payments shall be effectuated by the Trustee as soon as reasonably practicable after receipt of the notice of change. Nothing in this Plan shall prohibit the Debtor from making direct payments to the holders and/or servicers of mortgage claims to keep mortgage payments current until a change can be made by the Trustee, provided the Plan payments are current. Since it is contemplated that changes in monthly mortgage payments will be made without affecting any other party in interest, no further notice of such changes shall be required. Mortgage payments shall be made by the Chapter 13 Trustee in the ordinary course of Chapter 13 trusteeship business and no additional penalty or charges shall be assessed against the Debtor by reason thereof.

*****

10.   **Mortgage Current Upon Discharge**. The holder and/or servicer of a mortgage claim shall file in this bankruptcy case with the Bankruptcy Court Clerk and provide to the debtors, debtor's attorney and the Chapter 13 trustee a notice of any fees, expenses, or charges which have accrued during the bankruptcy case on the mortgage account and which the holder and/or servicer contend are 1) allowed by the note and security agreement and applicable nonbankruptcy law, and 2) recoverable against the debtors or the debtors' account. The notice shall be filed and sent annually, beginning with the holder and/or servicer's first annual reporting cycle after the entry of the initial plan confirmation order, if no annual reporting cycle exists, then no later than 365 days following the entry of order for relief herein, and each year thereafter during the pendency of the case, with a final notice sent following the filing of the trustee's notice of plan completion. The failure of a holder and/or servicer to give such notice for any given year of the case's administration shall be deemed a waiver for all purposes of any claim for fees, expenses or charges accrued during that year, and the holder and/or servicer shall be prohibited from collecting or assessing such fees, expenses or charges for that year against the debtors or the debtors' account during the case or after entry of the order granting a discharge. Unless the Court orders otherwise, an order granting a discharge in this case shall be a determination that all prepetition and postpetition defaults with respect to the debtors' mortgage account are

deemed current and reinstated on the original payment schedule under the note and mortgage as if no default had ever occurred.[18]

The Mortgagee received notice of the Second Amended Plan, the deadline to object to confirmation, and the date of the confirmation hearing.[19]  The Mortgagee did not object to its treatment in the Second Amended Plan.  That plan was confirmed on January 26, 2012 (the confirmed plan is hereinafter referred to as the "Plan").[20]

Throughout the duration of the Plan, the Trustee disbursed funds to the Mortgagee consistent with the terms of the Plan.

On September 16, 2013, the Mortgagee filed a Notice of Mortgage Payment Change as a supplement to its proof of claim to increase the contractual monthly installment payment to $1,916.78, purportedly due to an escrow shortage of in excess of $12,000.00 ("2013 Notice").[21]  On September 20, 2013, the Clarks filed a Motion to Disallow Notice of Mortgage Payment Change; Motion for Attorney's Fees and Notice of Opportunity for

---

[18]Id. at 4-5.

[19]Main Case Doc. 39.

[20]Main Case Doc. 43.  Under the terms of the order confirming the Plan, all property of the estate defined by 11 U.S.C. § 1306 (including postpetition earnings) remained property of the estate and did not revest in the Clarks until discharge.  The order further provided that the automatic stay remained in force and effect through discharge.

[21]Claims Register, September 16, 2013 Supplement to Claim No. 4.  In support of their Cross-Motion, the Clarks pleaded twenty additional material facts.  Clarks' Response and Cross-Motion at 2-5.  SPS argues that paragraphs 1-7, which relate to post-confirmation notices of payment changes, are not relevant, but it does not challenge their veracity with admissible evidence.  In addition, SPS did not dispute the truth of Clarks' paragraph 20, which states: "Throughout the Chapter 13 Bankruptcy, SPS and/or its predecessor were actively involved and never brought the issue of the September 1, 2011 mortgage payment change before the Court."  Clarks' Response and Cross-Motion at 5, ¶ 20.

Hearing ("Motion to Disallow").[22] In the Motion to Disallow, the Clarks recited, albeit inaccurately, that the 2013 Notice was the first notice of payment change filed since the commencement of the Chapter 13 case.[23]  Because the 2013 Notice failed to detail how the negative escrow balance accrued, the Clarks asserted that the shortfall was likely a portion of the prepetition arrearage that was being cured through the Plan.[24]  They further urged that "[u]nless [Mortgagee] can establish that the Negative Balance is legitimate, [Mortgagee] should be required to pay the Debtors' attorney's fees associated with this Motion."[25]  The Mortgagee filed an objection to the Motion to Disallow and reported that "counsel is in the process of obtaining evidence from [Mortgagee] concerning the change in the escrow account."[26]  The Mortgagee did not contest the Clarks' allegation that the 2013 Notice was the first notice of payment change filed in the case.

On November 6, 2013, the Court held a hearing on the Clarks' Motion to Disallow and the Mortgagee's objection.  The Mortgagee did not present any evidence to show how or when the large negative escrow balance accrued, but instead announced that it intended to withdraw the 2013 Notice.[27]  The Mortgagee filed an application to withdraw the 2013

---

[22]Main Case Doc. 85.

[23]Motion to Disallow at 1, ¶ 3.

[24]Id. at 2, ¶ 7.

[25]Id. at 2, ¶ 8.

[26]Main Case Doc. 93.

[27]Minute, Main Case Doc. 97.

Notice, which was granted on December 12, 2013.[28]  A hearing was held on the Clarks' request for fees, which was taken under advisement, and in January 2014, the parties announced that they had settled the fee issue.[29]

After the 2013 Notice was withdrawn, the Mortgagee did not file another payment change notice until April 25, 2016.[30]  In that Notice of Mortgage Payment Change ("2016 Notice"), the Mortgagee advised that effective June 1, 2016, the Clarks' monthly mortgage payment would be $1,688.13 as a result of an escrow adjustment.  In an accompanying statement, the Mortgagee explained that the adjustment was due to an expected increase in taxes and insurance premiums and an escrow shortage of $513.06.  The Trustee implemented the payment change on June 1, 2016.

On July 5, 2016, the Trustee filed a Notice of Completion of Plan Payments, which was delivered to Mortgagee's counsel of record by the Court's electronic filing system.[31]  The notice advised creditors that "[a]ppropriate inquiry should be made to determine if the Debtors  have met all requirements necessary to receive a discharge in this case."[32]

On July 11, 2016, the Clarks filed and served their Certification and Request for Issuance of Discharge and Notice of Opportunity to Object.[33]

---

[28]Main Case Docs. 98, 104.

[29]Main Case Docs. 102, 103, 105, 106, 107.

[30]Claims Register, April 25, 2016 Supplement to Claim No. 4.

[31]Main Case Doc. 130.

[32]Id.

[33]Main Case Doc. 134.

On July 12, 2016, the Trustee filed a Notice of Final Cure Payment with respect to the Mortgagee's claim ("Final Cure Notice") pursuant to Bankruptcy Rule 3002.1(f), and certified that he mailed it to the Mortgagee.[34]  In the Final Cure Notice, the Trustee certified that he paid the Mortgagee the full amount required by the Plan to cure the Clarks' prepetition default, *i.e.*, $32,216.77, and that he paid the Mortgagee $67,500.17 in contractual installment payments.  Further, "[t]o assist [the Mortgagee] in reconciling the claim, a history of payments made by the trustee" was attached to the Final Cure Notice.  As required under Rule 3002.1(f), the Trustee informed the Mortgagee of its obligation to file and serve a response under subdivision (g) as follows:

### Part 4: A Response Is Required By Bankruptcy Rule 3002.1(g)

Under Bankruptcy Rule 3002.1(g), the creditor *must* file and serve on the debtor(s), their counsel, and the trustee, within 21 days after service of this notice, a *statement indicating* whether the creditor agrees that the debtor(s) have paid in full the amount required to cure the default and stating *whether the debtor(s) have (i) paid all outstanding postpetition fees, costs, and escrow amounts due, and (ii) consistent with § 1322(b)(5) of the Bankruptcy Code, are current on all postpetition payments as of the date of the response.*  Failure to file and serve the statement may subject the creditor to further action of the court, including possible sanctions.[35]

The Mortgagee did not file a statement indicating whether, consistent with § 1322(b)(5), the Clarks were current on their postpetition mortgage payments.  On August 10, 2016, however, the Mortgagee filed another Notice of Mortgage Payment Change, this

---

[34]Main Case Doc. 135.  The certificate of mailing indicates that the Final Cure Notice was sent to the addresses provided by the Mortgagee as reflected in the Claims Register.  The Final Cure Notice was also emailed to Mortgagee's counsel via the Court's ECF system.  The Mortgagee has not denied receipt of the Final Cure Notice.

[35]Final Cure Notice at 2 (emphasis added).  This paragraph is consistent with the language suggested in Director's Form 4100N.

one *reducing* the amount of the Clarks' monthly mortgage payment by approximately $330.00 as of November 1, 2016.[36] This notice and statement reported an escrow surplus of $962.91. Nothing in this notice suggested that the postpetition mortgage payments were not current or that any postpetition charges were outstanding.

On August 11, 2016, the Court entered an Order of Discharge,[37] and on September 14, 2016, the Court entered a Final Decree discharging the trustee and closing the case.[38]

Fifteen months after the Clarks' bankruptcy case was closed, the Mortgagee filed in the Claims Register yet another Notice of Mortgage Payment Change, effective February 1, 2018, to which it attached another escrow analysis that reflected an escrow surplus of $4,568.43.[39]

## V.    Conclusions of law

SPS argues that it is entitled to judgment as a matter of law because it is undisputed that the Plan failed to take into account the September 2011 Notice of Payment Change, and thus the contractual installment payments made by the Trustee were deficient by $346.68 per month. SPS contends that the Clarks should have made up the difference by making direct payments to the Mortgagee on a monthly basis in order to keep the mortgage current. Thus SPS seeks a declaration that the Clarks accrued a postpetition delinquency in the amount of $20,107.44, which is due, owing, and collectable, notwithstanding the Clarks' completion

---

[36]Claims Register, August 10, 2016 Supplement to Claim No. 4.

[37]Main Case Doc. 139.

[38]Main Case Doc. 142.

[39]Claims Register, February 12, 2018 Supplement to Claim No. 4.

of their Plan and their discharge.  SPS contends that because such a declaration would defeat the Clarks' claims against SPS as matter of law, their claims should be dismissed.

The Clarks argue that because SPS did not timely respond to the Final Cure Notice and disclose that postpetition mortgage payments were not current, SPS is barred from presenting evidence of the purported delinquency under Bankruptcy Rule 3002.1(i).  In addition, the Clarks contend that SPS should be estopped from relying on the September 2011 Notice of Payment Change because it failed to raise the discrepancy between the Plan payment amount and the amount stated in the September 2011 Notice of Payment Change, notwithstanding numerous opportunities to do so prior to the closing of their bankruptcy case.

A.   Bankruptcy Rule 3002.1

Rule 3002.1 of the Federal Rule of Bankruptcy Procedure ("Rule 3002.1") was promulgated to assist Chapter 13 debtors and mortgagees in implementing § 1322(b)(5), which allows debtors to cure prepetition mortgage defaults and maintain postpetition mortgage payments over the course of the plan.  As the Advisory Committee Notes state–

> In order to be able to fulfill the obligations of § 1322(b)(5), a debtor and the trustee must be informed of the exact amount needed to cure any prepetition arrearage, see Rule 3001(c)(2), and the amount of the postpetition payment obligations. If the latter amount changes over time, due to the adjustment of the interest rate, escrow account adjustments, or the assessment of fees, expenses, or other charges, notice of any change in payment amount needs to be conveyed to the debtor and trustee. Timely notice of these changes will permit the debtor or trustee to challenge the validity of any such charges, if necessary, and to adjust postpetition mortgage payments to cover any properly claimed adjustment.[40]

---

[40]Advisory Committee Notes, Fed. R. Bankr. P. 3002.1 (2011).

Rule 3002.1 provides–

(a)  **In general**.  This rule applies in a chapter 13 case to claims that are (1) secured by a security interest in the debtor's principal residence, and (2) provided for under § 1322(b)(5) of the Code in the debtor's plan.

(b)  **Notice of payment changes**.  The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice of any change in the payment amount, including any change that results from an interest rate or escrow account adjustment, no later than 21 days before a payment in the new amount is due.

(c)  **Notice of fees, expenses, and charges**.  The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence. The notice shall be served within 180 days after the date on which the fees, expenses, or charges are incurred.

(d)  **Form and content.**  A notice filed and served under subdivision (b) or (c) of this rule shall be prepared as prescribed by the appropriate Official Form, and filed as a supplement to the holder's proof of claim. The notice is not subject to Rule 3001(f).

(e)  **Determination of fees, expenses, or charges.**  On motion of the debtor or trustee filed within one year after service of a notice under subdivision (c) of this rule, the court shall, after notice and hearing, determine whether payment of any claimed fee, expense, or charge is required by the underlying agreement and applicable nonbankruptcy law to cure a default or maintain payments in accordance with § 1322(b)(5) of the Code.

(f)  **Notice of final cure payment.**  *Within 30 days after the debtor completes all payments under the plan, the trustee shall file and serve on the holder of the claim, the debtor, and debtor's counsel a notice stating that the debtor has paid in full the amount required to cure any default on the claim. The notice shall also inform the holder of its obligation to file and serve a response under subdivision (g).* If the debtor contends that final cure payment has been made and all plan payments have been completed, and the trustee does not timely file and serve the notice required by this subdivision, the debtor may file and serve the notice.

(g)  **Response to notice of final cure payment**. *Within 21 days after service of the notice under subdivision (f) of this rule, the holder shall file and serve on the debtor, debtor's counsel, and the trustee a statement indicating (1) whether it agrees that the debtor has paid in full the amount required to cure the default on the claim, and (2) whether the debtor is otherwise current on all payments consistent with § 1322(b)(5) of the Code. The statement shall itemize the required cure or postpetition amounts, if any, that the holder contends remain unpaid as of the date of the statement*. The statement shall be filed as a supplement to the holder's proof of claim and is not subject to Rule 3001(f).

(h)  **Determination of final cure and payment**.  On motion of the debtor or trustee filed within 21 days after service of the statement under subdivision (g) of this rule, the court shall, after notice and hearing, determine whether the debtor has cured the default and paid all required postpetition amounts.

(i)  **Failure to notify**. *If the holder of a claim fails to provide any information as required by subdivision* (b), (c), or *(g) of this rule, the court may, after notice and hearing, take either or both of the following actions:*

> *(1) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or*

> *(2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure*.[41]

The Advisory Committee Note relating to subdivision (i), the section under which the Clarks

seek relief, provides–

> If, after the chapter 13 debtor has completed payments under the plan and the case has been closed, the holder of a claim secured by the debtor's principal residence seeks to recover amounts that should have been but were not disclosed under this rule, the debtor may move to have the case reopened in order to seek sanctions against the holder of the claim under subdivision (i).[42]

---

[41]Fed. R. Bankr. P. 3002.1 (effective December 1, 2011) (emphasis added).

[42]Advisory Committee Notes, Fed. R. Bankr. P. 3002.1(i) (2011).

The undisputed facts support the Clarks' request for an order precluding SPS from presenting any evidence that the Clarks were not current, or that any payments or charges due postpetition were unpaid, when the Clarks completed their payments under the Plan.  The record establishes that on July 5, 2016, the Trustee filed a Notice of Completion of Plan Payments, and on July 12, 2016, the Trustee filed the Final Cure Notice under Rule 3002.1(f).  He mailed the Final Cure Notice to the Mortgagee, and the Mortgagee's counsel received the Final Cure Notice via the Court's electronic filing system.  The Final Cure Notice advised the Mortgagee of its obligation to file and serve a response under Rule 3002.1(g), stating whether the mortgage was current, and if not, itemizing the postpetition amounts it contended were outstanding.  The Mortgagee failed to file the mandatory response, despite being advised that sanctions could be imposed for such failure.  Accordingly, the Clarks are entitled to an order under Rule 3002.1(i) barring SPS from presenting any evidence that the mortgage was not current as of the date of the Final Cure Notice.

SPS argues, however, that its failure to comply with Rule 3002.1(g) was "substantially justified" and "harmless" because "the Debtors had the information submitted in the Notice of Payment Change filed September 1, 2011 (ECF NO. 27), failed to address it, and yet proceeded to file a false Notice of Final Cure."[43]

First, the Clarks did not file any Notice of Final Cure, false or otherwise.  It was the Trustee who appropriately filed the Final Cure Notice, representing, through personal

_____

[43]SPS's Response to Cross-Motion at 2.

knowledge, that he disbursed installment payments to the Mortgagee in the amounts required by the confirmed Plan.[44]  The Trustee also advised the Mortgagee of its duty to file a response under Rule 3002.1(g), and attached a history of all contractual installment payments he made to enable the Mortgagee to determine whether "consistent with § 1322(b)(5) of the Bankruptcy Code, [debtors] are current on all postpetition payments as of the date of the response."[45]  Despite being duly noticed and instructed, the Mortgagee filed nothing.

The fact that the Mortgagee filed a Notice of Payment Change five years earlier is beside the point. The purpose of Rule 3002.1(g) is to let debtors know what the mortgagee contends is the status of the mortgage *at the conclusion of the plan*.  SPS's failure to give the Clarks information to which they were entitled deprived them of their right to seek a judicial determination of the alleged underpayments under Rule 3002.1(h).[46]  SPS's admitted failure to comply with Rule 3002.1(g) was not substantially justified nor was it harmless.[47]

---

[44]Notice of Final Cure, Main Case Doc. 135.

[45]<u>Id</u>. at 2.

[46]SPS contends that the Clarks cannot prevail because they did not file a motion to deem the mortgage current.  SPS's Motion at 8.  As set forth in detail above, the procedure for determining whether a mortgage is current at the conclusion of a plan starts with the trustee's notice of final cure, which triggers a duty on the part of the mortgagee to report and document any unpaid postpetition obligations.  The debtor is entitled to believe that the mortgage is current if the mortgagee does not file such a report. The rule does not envision or require the debtor to file a motion to deem the mortgage current.

[47]In its Response to Cross-Motion, SPS asks "the Court [to] permit it to respond to the Notice of Final Cure out of time and . . . deem SPS' Answer herein and Motion for Summary Judgment to be SPS' response to the Notice of Final Cure." <u>Id</u>. at 3. Under Bankruptcy Rule 9006(b)(1), SPS must show that its failure to respond in a timely manner was the result of "excusable neglect."  Nothing in SPS's pleadings explains why the Mortgagee did not file a response to the Final Cure Notice, so the Court cannot evaluate whether the failure was the result of neglect, and if so, whether the neglect was excusable. But the equities lean heavily

Accordingly, based upon the undisputed facts and Rule 3002.1(i), the Court strikes paragraphs 8, 9, and 10 of the Affidavit [of Melissa Braun] in Support of Plaintiff's Motion for Summary Judgment to the extent such paragraphs allege a postpetition delinquency, a default on the mortgage, and a present right to foreclose.  Paragraphs 5 and 6 of Part II of SPS's Motion are therefore unsupported by admissible evidence.   SPS's Motion is denied. Summary judgment is entered in favor of the Clarks to the extent they seek a declaration that all prepetition and postpetition defaults were cured and their mortgage was current as of July 12, 2016.

     B.    <u>Effect of the Confirmed Plan and Discharge</u>

        1.    *All parties were bound by the Plan.*

Under 11 U.S.C. § 1327(a), "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."[48]  An order confirming a plan is a final judgment,[49] and also binds the Chapter 13 trustee.[50]

---

against SPS in any event, as the Clarks have been prejudiced by the failure to respond, the length of the delay, and the impact on judicial proceedings.  <u>See, e.g.</u>, <u>Pioneer Inv. Services Co. v. Brunswick Assoc. Ltd. Partnership</u>, 507 U.S. 380, 395 (1993).  For two years post-discharge, the Clarks relied, to their detriment, upon their justifiable belief that the unopposed Notice of Final Cure meant that their mortgage was current when they exited their Chapter 13 case.  This adversary proceeding is a result of SPS's neglect.  SPS's request for permission to respond under Rule 3002.1(g) out of time is denied.

[48]11 U.S.C. § 1327(a).

[49]<u>See</u> <u>United Student Aid Funds, Inc. v. Espinosa</u>, 559 U.S. 260, 269 (2010).

[50]<u>See</u> <u>In re Diruzzo</u>, 527 B.R. 800, 805 (B.A.P. 1st Cir. 2015).

The Clarks' Second Amended Plan was proposed on December 14, 2011, and was confirmed in January 2012.  The Second Amended Plan provided that the Trustee would disburse funds to the Mortgagee to cure the prepetition arrearage in the amount of $32,216.77, and maintain the contractual installment payments in the amount of $1,115.46, consistent with the June 1, 2011 Rate Change Notice.  The Mortgagee's September 2011 Notice of Payment Change that increased the monthly payment amount to $1,462.14 was apparently overlooked by the Clarks when they proposed to pay $1,115.46 in their Second Amended Plan.

The Mortgagee, having due notice of the Second Amended Plan and adequate time to speak up, slept on its rights.  It remained silent in the face of a proposed plan that failed to provide for adequate maintenance payments in addition to cure payments, which violated the Mortgagee's rights under § 1322(b)(2) and (5).[51]  Because the Mortgagee did not object to its treatment, the Court assumed that the Second Amended Plan fully complied with § 1322(b), and confirmed the Plan under § 1329(a), binding all parties to its terms under

---

[51]These subsections of § 1322(b) provide that a plan may –

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . ;

*****

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any . . . secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]

11 U.S.C. § 1322(b).  Thus, if a debtor seeks to cure a monetary default on a home mortgage, the plan must also provide for maintaining the installment payments over the life of the plan.

§ 1327(a).  The Trustee disbursed installment payments of $1,115.46 per month to the Mortgagee as required by the Plan, which the Mortgagee apparently accepted, without complaint or comment, as the mortgage maintenance payments required under § 1322(b)(5).

To the extent that SPS now contends that the Plan did not comply with § 1322(b)(5) in that it did not provide for "maintenance of payments while the case is pending" in the proper amount, its position is barred by the binding effects of the unopposed and unappealed orders of confirmation and discharge.[52]

> **2.**      *The Clarks had no obligation to amend their confirmed Plan or to make direct payments to the Mortgagee.*

SPS argues that pursuant to paragraph 8 of the Plan, the Clarks had an obligation to (1) amend the Plan to provide for the September 2011 Notice of Payment Change and (2) make payments outside the Plan to keep the mortgage current.[53]  Paragraph 8 states in part: "Upon notice from the holders and/or servicers of mortgage claims of a change in the monthly payment, which is filed in the case, the Trustee is authorized to increase or decrease the Chapter 13 plan payment to provide for each change without necessity of formal modification of the plan."[54]  Thus, the Clarks did not have to modify their confirmed Plan to take into consideration any notice of change in monthly payment.

---

[52]See Espinosa, 559 U.S. at 263-76 (The confirmed plan was binding even though it contained terms that were inconsistent with the Bankruptcy Code.  Further, the confirmation and discharge orders were not defective just because their entry was based on legal error. By failing to appeal the orders, the aggrieved party was bound by their terms, and could not later collaterally attack their validity.)

[53]SPS's Motion at 6.

[54]Plan, Main Case Doc. 37, at 4, ¶ 8.

Another part of paragraph 8 of the Plan states:  "Nothing in the Plan shall prohibit the Debtor from making direct payments to the holders and/or servicers of mortgage claims to keep mortgage payments current until a change can be made by the Trustee, provided the Plan payments are current."[55]  So the Plan did not "prohibit" the Clarks from making direct payments to the Mortgagee to keep the mortgage current, but it did not require them to do so.  Under the Plan, if any maintenance payments were insufficient on account of a payment change, the Trustee could make up the difference in subsequent months "in the ordinary course of Chapter 13 trusteeship business and no additional penalty or charges shall be assessed against the Debtor by reason thereof."[56]

In this case, when the Mortgagee filed the 2013 Notice and the 2016 Notice, the Trustee and the Clarks performed precisely as contemplated and required under the Plan. The Clarks objected to the 2013 Notice, and the Mortgagee withdrew it after it could not explain the increase in the monthly payment.  The Trustee implemented the 2016 Notice without any amendment to the Plan.

> 3.   *Under the Plan, the mortgage was deemed current upon discharge unless the Mortgagee sought an order otherwise.*

Paragraph 10 of the Plan provided–

Unless the Court orders otherwise, an order granting a discharge in this case shall be a determination that all prepetition and postpetition defaults with respect to the debtors' mortgage account are deemed current and reinstated on

---

[55]<u>Id</u>.

[56]<u>Id</u>.

the original payment schedule under the note and mortgage as if no default had ever occurred.[57]

Under this provision, the burden was on the Mortgagee to timely seek an "order otherwise" by raising the issue of postpetition defaults prior to discharge.  The Mortgagee had notice that (1) the Clarks had completed making plan payments to the Trustee,[58] (2) the Clarks filed a Certification and Request for Issuance of Discharge and Notice of Opportunity to Object,[59] (3) the Trustee contended that all payments under the Plan had been made to the Mortgagee,[60] and (4) the Mortgagee had a duty to file a report if the mortgage was not current.[61]  The Mortgagee did not object to the discharge or otherwise seek any order to prevent paragraph 10 from being effective.  Thus, pursuant to paragraph 10 of the Plan, the Order of Discharge entered on August 11, 2016, constituted "a determination that all prepetition and postpetition defaults with respect to the debtors' mortgage account [were] deemed current and reinstated on the original payment schedule under the note and mortgage as if no default had ever occurred."[62]

The Clarks are therefore entitled to judgment as a matter of law declaring that as of August 11, 2016 – the date of their discharge – the mortgage was current and reinstated on the original payment schedule.

_____

[57]Id. at 5, ¶ 10.

[58]Main Case Doc. 130.

[59]Main Case Doc. 134.

[60]Final Cure Notice, Main Case Doc. 135.

[61]Id. at 2.

[62]Plan, Main Case Doc. 37 at 5, ¶ 10.

C.      Judicial Estoppel

The Clarks contend that SPS is judicially estopped from relying on the September 2011 Notice of Payment Change to prove that they underpaid the mortgage over the entire course of their Plan.  Judicial estoppel "is an equitable doctrine invoked by a court at its discretion" to preclude a party in a case from taking a position that is "clearly inconsistent" with a former position that the party took in the case, after considering the following circumstances:[63]

> First, a party's subsequent position must be clearly inconsistent with its former position.  Next, a court should inquire whether the suspect party succeeded in persuading a court to accept that party's former position, so that judicial acceptance of an inconsistent position in a later proceedings would create the perception that either the first or the second court was misled[.] Finally, the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped.[64]

It is undisputed that throughout the bankruptcy case, the Mortgagee had numerous, obvious opportunities to notify the Clarks that the monthly mortgage payment stated in the Plan was incorrect.  The Mortgagee had due notice that the contractual installment payment to be disbursed by the Trustee was  $1,115.46, approximately $350.00 per month less than the Mortgagee contended was due under the September 2011 Notice of Payment Change.  Yet the Mortgagee did not object to confirmation.  After confirmation, the Mortgagee accepted payments, without complaint, in the amount provided for in the Plan.  In September 2013, the Mortgagee filed a notice substantially increasing the installment payments, but

---

[63]Queen v. TA Operating, LLC, 734 F.3d 1081, 1087 (10th Cir. 2013) (internal quotation marks and citations omitted).

[64]Id. (internal quotations marks and citations omitted).

could not substantiate how it arrived at the payment amount.  Again, at that point, the Mortgagee, having an obligation to maintain accurate records and apply payments consistent with the Plan and the mortgage, should have notified the Clarks or the Trustee of the discrepancy, but instead, withdrew the 2013 Notice.  And even though the Clarks' objection alleged that the 2013 Notice was the *first* such notice filed in the case, the Mortgagee did not draw anyone's attention to the September 2011 Notice of Payment Change.  Instead, it continued accepting monthly payments in the amount of $1,115.46 for another three years, until it filed the 2016 Notice to increase the monthly installment payments to $1,688.13.  Again, the 2016 Notice did not mention any deficiency in past installment payments.  Finally, the Mortgagee did not raise the issue of  the accrual of almost five years of underpayments when it was required to do so under Rule 3002.1(g).

SPS relies upon In re Heinzle,[65] for the proposition that the Trustee, in his Final Cure Notice, did not certify that the Clarks made all postpetition payments, and therefore there has been "no determination that the plan had been fully performed" and there is "no judicial estoppel which precludes [the Mortgagee] from collecting, post-discharge, upon the payments that were not made under the [September 2011 Notice of Payment Change]." [66] The Heinzle case is not remotely analogous to this one.

In Heinzle, the ultimate issue was whether the debtors, who were in default on their postpetition mortgage maintenance payments, were entitled to a discharge under § 1328(a). The plan provided that the debtors would maintain the monthly installment payments.  The

_____

[65]511 B.R. 69 (Bankr. W.D. Tex. 2014).

[66] SPS's Motion at 8.

Heinzles contended that monthly installment payments made by debtors to their mortgage lender were not payments "under the plan" for the purposes of § 1328(a). The court held that installment payments made in a "cure and maintain" plan under § 1322(b)(5) were payments "under the plan," regardless of whether they were made by trustee or by the debtors. Because the debtors failed to make all payments under the plan (they were thirty months in arrears), the trustee's motion to deny the Heinzles' discharge was granted.

The section in <u>Heinzle</u> that discusses the effect of the trustee's notice of final cure is also distinguishable on its facts. The Heinzles argued that because under Rule 3002.1, the time to file such a notice was "within 30 days after the debtor completes all payments under the plan,"[67] the trustee tacitly admitted that the debtors completed all payments under the plan by filing it. Thus, they argued, the trustee should be judicially estopped from taking the opposite position. The court found judicial estoppel did not apply because the trustee did not and could not take a position on whether the debtors made all required payments to the mortgage lender – the trustee had personal knowledge only of the payments she made under the plan.

SPS claims that this is where <u>Heinzle</u>'s reasoning establishes that there was no determination that the Clarks' plan had been fully performed and there is "no judicial estoppel which precludes [the Mortgagee] from collecting, post-discharge, upon the payments that were not made under the [September 2011 Notice of Payment Change."[68] The Trustee in this case, however, had personal knowledge that all installment payments in the

[67]Fed. R. Bankr. P. 3002.1(f)

[68]SPS's Motion at 8.

amounts *required under the Plan* were current.  Further, he documented each payment he made and invited the Mortgagee to prove otherwise by responding to the Final Cure Notice, which the Mortgagee did not do.[69]  As the <u>Heinzle</u> court noted, under Rule 3002.1(g), "it is the mortgage lender, not the Trustee, who has both the *information and duty to report* if Debtors have failed to make their mortgage payments post-petition."[70]  SPS's argument against judicial estoppel is not supported by <u>Heinzle</u>.

However, because SPS is precluded under Rule 3002.1(i) from offering evidence it should have disclosed under Rule 3002.1(g), and because under paragraph 10 of the Plan, the entry of the discharge conclusively determined that the Clarks were current on their mortgage, the Court concludes that it is unnecessary, at this time, to decide – and the Court takes no position on – whether SPS should also be precluded from claiming any postpetition defaults under the doctrine of judicial estoppel.

## VI.    Conclusion

For the reasons stated herein, (1) SPS's Motion is denied; (2) the Clarks' Cross-Motion is granted; (3) SPS's counterclaim is dismissed; (4) all unresolved issues will be set for trial; and (5) the material facts set forth in Part IV of this Order shall be deemed established for purposes of trial.

**SO ORDERED** this 26th day of November, 2018.

DANA L. RASURE, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

---

[69]The mortgage lender in <u>Heinzle</u> complied with Rule 3002.1(g) and reported the postpetition arrearage as required.

[70]<u>Heinzle</u>, 511 B.R. at 81 (emphasis added).

26